**STATE**

v.

**Marcos RODRIGUEZ.**

No. 2004–190–C.A.

Supreme Court of Rhode Island.

March 8, 2007.

Aaron L. Weisman, Esq., Providence, for plaintiff.

Raymond Sussman, Esq., *pro hac vice*, for defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

We consider in this case whether a defendant who has been convicted previously in the State of New York of second-degree felony murder, the predicate felony being kidnapping, also may be tried in Rhode Island for the same kidnapping, or whether the Rhode Island prosecution places him twice in jeopardy for the same offense in violation of both the United States [1] and

---

1. The Fifth Amendment to the United States Constitution says, in part: No person shall "be subject for the same offense to be twice put in jeopardy of life or limb."

Rhode Island Constitutions.[2]

The defendant, Marcos Rodriguez, appeals from an order of the Superior Court denying his motion to dismiss one count of an indictment, charging him with kidnapping with the intent to extort.[3] Mr. Rodriguez contends that the kidnapping indictment impermissibly subjects him to double jeopardy because he previously was prosecuted for this offense by way of his felony-murder conviction in New York. We conclude, however, that under the principle of dual sovereignty, the same villainous act may give rise to separate offenses in two jurisdictions. Accordingly, we affirm.

# I

## Facts and Procedural History

The relevant facts supporting Mr. Rodriguez's defense of double jeopardy are not in substantial dispute. On or around May 23, 1999, Ricardo Gomez was kidnapped in Rhode Island. Two days later, his remains, hands and feet bound and burned beyond recognition, were discovered under the Whitestone Bridge in the Bronx, New York. After conducting concurrent investigations, police officials in New York and Rhode Island identified defendant as a perpetrator, theorizing that he kidnapped Mr. Gomez from Rhode Island and mur-

dered him over an outstanding debt allegedly incurred in a transaction for cocaine. In December 2001, Rodriguez was tried and convicted in New York of second-degree felony murder and was sentenced to serve twenty-five years to life in a New York prison. Under the Interstate Agreement on Detainers Act,[4] defendant subsequently was brought to Rhode Island to be tried for the offenses of kidnapping with the intent to extort money [5] and conspiracy to commit the crime of kidnapping, for which he previously had been indicted in Rhode Island.

Before the Superior Court in Rhode Island, Rodriguez moved, under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure, to dismiss the kidnapping count on double jeopardy grounds, arguing that federal and state constitutional provisions precluded the State of Rhode Island from prosecuting him for the kidnapping of Ricardo Gomez. He reasoned that because he already had been prosecuted and punished for felony murder in New York, the underlying felony being Gomez's kidnapping, the Rhode Island indictment placed him twice in jeopardy for the same offense. Moreover, Rodriguez maintained that the collaborative efforts of New York and Rhode Island officials to

**2.** Article 1, section 7 of the Rhode Island Constitution says, in pertinent part: "No person shall be subject for the same offense to be twice put in jeopardy."

**3.** The defendant did not seek to dismiss the second count of the indictment, charging him with conspiracy to commit the crime of kidnapping. He was alleged to have conspired with Edward Pozo. According to the Attorney General, Pozo gave a statement to the Providence police on December 8, 1999, in which he admitted his participation in the abduction of Ricardo Gomez. Apparently Mr. Pozo later absconded; he remains a fugitive.

**4.** See G.L.1956 § 13-13-2, Article I ("[I]t is the policy of the party states and the purpose

of this agreement to encourage the expeditious and orderly disposition of [outstanding] charges [against prisoner detainers] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.").

**5.** See G.L.1956 § 11-26-2, which reads:

"**Kidnapping with intent to extort.**— Whoever commits any of the offenses mentioned in this chapter with intent to extort money or other valuable thing shall be guilty of a felony, and, upon conviction, shall be punished by imprisonment for life or for any term not less than five (5) years."

prosecute him essentially created a merger of the two jurisdictions, thereby negating the doctrine of dual sovereignty.

■ An evidentiary hearing on defendant's motion was held on January 30, 2004, and February 3, 2004. After considering arguments from counsel, the motion justice denied defendant's motion to dismiss, holding that the cooperative efforts of Rhode Island and New York officials in investigating and prosecuting defendant did not defeat the dual sovereignty rule. The motion justice also rejected defendant's substantive double jeopardy argument that extortionate kidnapping was a lesser-included offense of his New York felony-murder conviction. An order denying defendant's motion was entered on April 18, 2005, from which defendant prematurely appealed.[6]

## II

### Standard of Review

■ We preface our consideration of defendant's constitutional arguments by noting that we have jurisdiction over this appeal under *Abney v. United States*, 431 U.S. 651, 659, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) and *State v. Berberian*, 122 R.I. 693, 696–97, 411 A.2d 308, 309–10 (1980). "While a denial of a motion to dismiss a criminal action is not a final judgment from which an appeal may be taken, this [C]ourt has stated that when the motion to dismiss is based upon double-jeopardy and collateral-estoppel grounds * * * the [C]ourt will allow an immediate appeal." *State v. Harrington*, 705 A.2d 998, 998 (R.I.1997) (mem.); *see also State v. Godette*, 751 A.2d 742, 745–46

(R.I.2000). We also adhere to the standard that this Court engages in a *de novo* review, "with respect to questions of law and mixed questions of law and fact involving constitutional issues * * *." *State v. Snell*, 892 A.2d 108, 115 (R.I.2006); *see also State v. Campbell*, 691 A.2d 564, 569 (R.I.1997).

## III

### Discussion

Advancing the same arguments on appeal as he did before the motion justice, Rodriguez first asserts that Rhode Island is barred from prosecuting him for the kidnapping of Ricardo Gomez because of his previous conviction in New York for felony murder, the underlying felony being the same kidnapping that Rhode Island now seeks to pursue. The defendant relies on a line of United States Supreme Court cases to support his contention that double jeopardy bars prosecution for a lesser-included offense, *e.g.*, kidnapping, after conviction for a greater offense, *e.g.*, felony murder. *See Lewis v. United States*, 523 U.S. 155, 177, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998) (Scalia, J. and Thomas, J., concurring) ("[D]ouble jeopardy law treats greater and lesser included offenses as the same, * * * so that a person tried for felony murder cannot subsequently be prosecuted for the armed robbery that constituted the charged felony. That is fair enough; * * *."); *Whalen v. United States*, 445 U.S. 684, 693–94, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Harris v. Oklahoma*, 433 U.S. 682, 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam);

---

**6.** The defendant filed his notice of appeal on March 29, 2004, more than a year before an order denying defendant's motion was entered. Although defendant's appeal was premature, "[t]his Court generally has overlooked the premature filing of a notice of appeal." *McBurney v. The GM Card*, 869 A.2d 586, 589 n. 3 (R.I.2005) (citing *Russell v. Kalian*, 414 A.2d 462, 464 (R.I.1980)). Accordingly, defendant's appeal is properly before us.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see also State v. Doyon,* 416 A.2d 130, 134 (R.I.1980) (underlying felony of arson merges with felony murder because only one of the offenses required proof of a fact the other did not); *State v. Innis,* 120 R.I. 641, 658, 391 A.2d 1158, 1167 (1978) ("defendant may not be convicted of both murder in the first degree under a felony murder theory and the underlying felony of robbery"), *vacated on other grounds, Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The defendant also asserts that Rhode Island "waived any claim to a constitutional right of dual sovereignty" by and through the conduct of its law enforcement and prosecutorial officials in cooperating with New York officials to convict defendant. Because we deem the dual sovereignty principle dispositive of defendant's double jeopardy argument, we begin our analysis by addressing the doctrine of dual sovereignty.

### A. Dual Sovereignty

Dual sovereignty is a concept firmly embedded in our constitutional jurisprudence, deriving from the reality that each state was an independent political entity before the United States Constitution was ratified.[7] *See Printz v. United States,* 521 U.S. 898, 918–19, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Although the several states surrendered many of their sovereign powers "in order to form a more perfect union," U.S. Const., Preamble, they retained "a residuary and inviolable sovereignty." *Printz,* 521 U.S. at 919, 117 S.Ct. 2365 (quoting The Federalist No. 39 (J. Madison)). At first, residual state sovereignty largely was implicit "in the Constitution's conferral upon Congress of not all governmental powers, but only discrete,

enumerated ones * * *" but later "was rendered express by the Tenth Amendment's assertion that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'" *Printz,* 521 U.S. at 919, 117 S.Ct. 2365.

As separate sovereigns, the federal government and each state possess, "the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" *United States v. Wheeler,* 435 U.S. 313, 320, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (quoting *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922)). Thus, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" *Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (quoting *Lanza,* 260 U.S. at 382, 43 S.Ct. 141).

Although the federal Double Jeopardy Clause, which applies to the states through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. Amend. V, the United States Supreme Court repeatedly has held that even identical offenses are not considered the "same offense" within the meaning of double jeopardy if they are prosecuted by independent sovereigns. *See Heath,* 474 U.S. at 88, 106 S.Ct. 433 (successive state-state prosecutions); *Wheeler,* 435 U.S. at 330, 98 S.Ct. 1079 (successive Navajo tribal court-federal prosecutions); *Bartkus v. Illinois,* 359 U.S. 121, 136, 79 S.Ct. 676, 3 L.Ed.2d

---

7. Rhode Island ratified the Constitution on   May 29, 1790.

684 (1959) (successive federal-state prosecutions); *United States v. Rezaq*, 134 F.3d 1121, 1128 (D.C.Cir.1998) (successive foreign-federal prosecutions). Moreover, it is well established by this Court that "Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution." *State v. Rodriguez*, 822 A.2d 894, 906 (R.I.2003). Accordingly, under both federal and state constitutional standards, although double jeopardy forecloses multiple prosecutions for the same offense by the same sovereign, it does not prohibit successive prosecutions by separate sovereigns. *See Heath*, 474 U.S. at 87–88, 106 S.Ct. 433. As the United States Supreme Court instructs, "when the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.'" *Id.* at 88, 106 S.Ct. 433 (quoting *Moore v. Illinois*, 55 U.S. (14 How.) 13, 20, 14 L.Ed. 306 (1852)).

■ The crucial question in determining the applicability of the dual sovereignty doctrine is whether the entity that seeks to prosecute a defendant for the same course of conduct, for which another entity previously has subjected the defendant to jeopardy, draws its authority to punish the offender from a distinct source of power. *Heath*, 474 U.S. at 88, 106 S.Ct. 433; *see, e.g., Wheeler*, 435 U.S. at 320, 98 S.Ct. 1079; *Waller v. Florida*, 397 U.S. 387, 393, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *Puerto Rico v. Shell Co.*, 302 U.S. 253, 264, 58 S.Ct. 167, 82 L.Ed. 235 (1937); *Lanza*, 260 U.S. at 382, 43 S.Ct. 141. Clearly, states are separate sovereigns with respect to the federal government because each state's power to prosecute is derived from its own "inherent sovereignty," not from the federal government.

*Wheeler*, 435 U.S. at 320 n. 14, 98 S.Ct. 1079. Only more recently, however, has the United States Supreme Court articulated the applicability of the dual sovereignty doctrine with respect to successive prosecutions under the laws of different states. *Heath*, 474 U.S. at 88–89, 106 S.Ct. 433. Mindful of the importance of the basis of authority inquiry described above, the Court in *Heath* explained that "States are no less sovereign with respect to each other than they are with respect to the Federal Government." *Id.* at 89, 106 S.Ct. 433. The power of states to prosecute criminal cases derives from "separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." *Heath*, 474 U.S. at 89, 106 S.Ct. 433.

■ Consistent with this analysis, the Supreme Court in *Heath* held that "[t]he dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause." *Heath*, 474 U.S. at 88, 106 S.Ct. 433. To hold otherwise, the Court announced:

"'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'

"* * * A State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of *its* own laws. Just as the Federal Government has the right to decide that a state prosecution has not vindicated a violation of the 'peace and dignity' of the Federal Government, a State must be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign inter-

est." *Id.* at 93, 106 S.Ct. 433 (quoting *Bartkus,* 359 U.S. at 137, 79 S.Ct. 676).

## B. The *Bartkus* Exception

■■■■ The Supreme Court has insinuated an incommodious exception to the principle of dual sovereignty. In *Bartkus,* Justice Frankfurter suggested that dual state and federal prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a "tool" of the other, or if the state prosecution merely was "a sham and a cover for a federal prosecution." *Bartkus,* 359 U.S. at 123–24, 79 S.Ct. 676. Although a number of courts have inferred an exception to the dual sovereignty rule from this language in *Bartkus, see United States v. Raymer,* 941 F.2d 1031, 1037 (10th Cir. 1991); *United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir.1987), the exception is considered extremely narrow and difficult to prove.[8] *See United States v. Rashed,* 234 F.3d 1280, 1282 (D.C.Cir. 2000); *United States v. Guzman,* 85 F.3d 823, 827 (1st Cir.1996); *United States v. Figueroa–Soto,* 938 F.2d 1015, 1019 (9th Cir.1991). As articulated by the First Circuit Court of Appeals in *Guzman,* the exception is limited "to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Guzman,* 85 F.3d at 827. However, even in *Guzman,* in which the evidence indicated that an agent of the United States traveled to the island of St. Maarten, alerted St. Maarten police to the defendant's presence on a ship smuggling drugs, participated in a search for drugs on board, and testified at trial, the court held that those facts demonstrated, "nothing more than the ren-

dering of routine intergovernmental assistance." *Guzman,* 85 F.3d at 828. The court concluded that "[c]ooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule." *Id.*

In the instant case, defendant urges this Court to rule that the dual sovereignty doctrine does not apply because of the joint efforts of New York and Rhode Island officials to prosecute defendant. The defendant asserts that "[e]ach state acted on behalf of the other[,]" and that "the conduct of the law enforcement officials merged the prosecutions to such an overlapping extent that they were no longer separate." Accordingly, defendant contends that Rhode Island "has waived any right it may have had pursuant to the doctrine of dual sovereignty."

Based upon our *de novo* review of the record in this case, we concur with the motion justice that defendant has not presented sufficient evidence to warrant an application of the *Bartkus* exception. As the motion justice articulated in his decision, the evidence suggested that the victim, Ricardo Gomez, was kidnapped from Rhode Island and remained,

> "in continuous kidnapped custody until he was killed. Wherever the fatal blow was struck or Ricardo Gomez drew his last breath, the presence of his remains in New York gave that state the strongest *prima facie* claim of jurisdiction to prosecute the homicide. There is no evidence what[so]ever that Rhode Island prosecutorial authority dominated or manipulated the New York law enforcement officers or prosecutors in their investigation and prosecution of a person

---

**8.** Some courts have gone as far as to question whether the exception exists at all. *See United States v. Brocksmith,* 991 F.2d 1363, 1366

(7th Cir.1993); *United States v. Patterson,* 809 F.2d 244, 247 n. 2 (5th Cir.1987).

accused of murder, over which Rhode Island had at best a highly questionable jurisdiction, so that the New York prosecution was a sham."

■ Nonetheless, defendant submits that certain events demonstrate the extent to which the Rhode Island Attorney General and the New York District Attorney collaborated to bring about successive prosecutions for the murder and kidnapping of Ricardo Gomez. According to the record, defendant and his cohort, Edward Pozo, were both indicted in Rhode Island for extortionate kidnapping and conspiracy in June of 2000. Although Mr. Pozo was extradited to Rhode Island, defendant remained in New York to await trial for the murder of Ricardo Gomez. The defendant insists that the decision by the Attorney General in Rhode Island to extradite Mr. Pozo, and not defendant, implicitly evinces an agreement with the District Attorney in New York to divide the prosecutions for murder and kidnapping between the two jurisdictions. Moreover, defendant maintains that each jurisdiction's offer of immunity to Martha Villalona, defendant's girlfriend, for her alleged participation in the kidnapping, in exchange for her testimony, further illustrates the existence of this alleged agreement.

Contrary to the defendant's assertion, however, we do not infer from the evidence that any surreptitious agreement, either express or implied, existed between the prosecutors in Rhode Island and New York to prosecute the defendant successively for murder and kidnapping. We fail to see how the extradition of Mr. Pozo, or the immunity offered to Ms. Villalona, demonstrates a merger of prosecutorial effort arising to such an insidious level as to devastate the sovereignty of either jurisdiction. Despite the defendant's allegations, we agree with the trial justice's findings that:

"At best, all the defendant shows is mutual cooperation between the two states to investigate and prosecute the defendant for the respective charges, in which each jurisdiction had the greater interest.

" * * *

"The conduct of police and prosecutors * * * [has been] shown to be nothing more than the type of routine cooperation commended by the court in *United States v. Guzman* * * *. The purely speculative conclusory allegations of the defendant * * * do not demonstrate that either state was acting as the prosecutorial tool of the other."

## IV

## Conclusion

Because we discern no circumstance warranting an exception to the dual sovereignty doctrine, we are satisfied that the motion justice properly denied the defendant's motion to dismiss the kidnapping with intent to extort count from the Rhode Island indictment. It therefore is unnecessary to address the defendant's substantive double jeopardy argument raised on appeal. Accordingly, we affirm the order denying the defendant's motion to dismiss and remand the papers to the Superior Court.